**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

GREGORY KLEN,                          )
                                       )
Plaintiff,                             )
                                       )
vs.                                    )   NO. 2:05-CV-151
                                       )
CITY OF CROWN POINT, et al.,           )
                                       )
Defendants.                            )

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment, filed by Defendants, City of Crown Point, Crown Point Police Department, Patrolman Jeff Eldridge, Patrolman William Pouch, and Commander James Poling, on June 15, 2006.  For the reasons set forth below, Defendants' Motion for Summary Judgment is **GRANTED**.  The Clerk is **ORDERED** to **DISMISS WITH PREJUDICE** Plaintiff's claims under 42 U.S.C. section 1983, including excessive use of police force and false arrest.  The Clerk is **ORDERED** to **DISMISS WITHOUT PREJUDICE** Plaintiff's state law claims for intentional infliction of emotional distress and battery.  Furthermore, the Clerk is **ORDERED** to **CLOSE** this case.

BACKGROUND

Procedural Background

This controversy stems from a pursuit of pro se Plaintiff,

Gregory Klen (who was riding a motorcycle), by Officer Lloyd Jeff

Eldridge of the Crown Point Police Department.  Klen filed a complaint

on March 18, 2005, stating federal claims under 42 U.S.C. section 1983

for excessive use of force and false arrest, and state law claims of

intentional infliction of emotional distress and battery.

Defendants, City of Crown Point, Crown Point Police Department,

Patrolman Jeff Eldridge, Patrolman William Pouch, and Commander James

Poling (collectively "Defendants") filed the present Motion for

Summary Judgment on June 15, 2006.  On the same date, Defendants

provided Klen, pro se, with the requisite notice of the consequences

of failing to respond to the movant's factual assertions pursuant to

*Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992).  On August 15,

2006, Klen filed the following response:

> This is a response to defendants motion to be
> taken under advisement.  Plaintiff, Gregory Klen
> is asking to take this matter to trial.  For
> reasons of what has been stated is partially
> untrue by defendants.  The only way to get all
> the facts out in the open is to bring it in front
> of a judge.  I am defending myself in this
> matter, but i [stet.] have come to realize I need
> legal representation.  But all I have been asking
> for is my medical bills and expenses paid for.
> If I was wrong I would not be here.  Thank you
> for your understanding, and I hope to have my day
> in court to prove that I am right.

(Pl's Resp., filed 8/15/06.)  After reviewing Klen's response, this

Court granted Klen 45 days from the Court order dated September 13,

2006, in which to obtain legal representation and file a response to

Defendants' Motion for Summary Judgment that complies with Federal

Rule of Civil Procedure 56.  The Court warned Klen that should he not obtain counsel and resubmit his response, the Court would rule upon the Motion for Summary Judgment based upon the current memoranda. There is no evidence on the record that Klen has retained counsel, and Klen did not file another response.  Therefore, this Court will rule on the pending motion based upon Defendants' Motion for Summary Judgment, Defendants' Statement of Material Facts in Support of Their Motion for Summary Judgment, Defendants' Brief in Support of Their Motion for Summary Judgment (all filed on June 15, 2006), and Klen's response filed August 15, 2006.

Undisputed Factual Background

First, the Court notes that Klen's response to the instant summary judgment motion was deficient.  Northern District of Indiana Local Rule 56.1 provides that a response shall include a "Statement of Genuine Issues" setting forth, with appropriate citations to discovery responses, affidavits, depositions, or other admissible evidence, all material facts as to which it is contended there exists a genuine issue necessary to be litigated.  Klen's one paragraph response is devoid of a statement of genuine issues.  Consequently, this Court has only considered the statement of facts set forth by Defendants. *See Flaherty v. Gas Research Inst.*, 31 F.3d 451, 453 (7th Cir. 1994) (holding where nonmoving party fails to comply with summary judgment rules, the court may deem the facts containing in the moving

party's statement of facts to be admitted).

On the evening of August 31, 2003, Klen consumed two beers and two shots of hard liquor.  Just prior to the pursuit in question, Klen was driving his motorcycle to the R House of Brews, a pub in downtown Crown Point, Indiana.  Christine Berglund was a passenger on the back of the motorcycle.

Officer Eldridge of the Crown Point Police Department was on patrol the night of August 31, 2003.  At approximately 11:19 p.m., Officer Eldridge saw Klen driving his motorcycle northbound on Main Street in Crown Point.  Officer Eldridge noticed that the motorcycle lacked operational taillights or brake lights, it had an expired license plate, it was weaving from side to side, and it disobeyed a red traffic light.  So, Officer Eldridge activated his overhead emergency lights on his marked squad car to initiate a traffic stop. Klen turned his head around, and Officer Eldridge saw Klen look at him.  The motorcycle pulled over for a moment in front of R House of Brews Pub, and when Officer Eldridge pulled behind Klen, the motorcycle accelerated forward, made a u-turn and proceeded in excess of the speed limit.  Although Klen claims his brakes failed, Officer Eldridge saw nothing to indicate that Klen was having difficulty braking.

Officer Eldridge then turned on his emergency siren, and followed Klen, who was traveling approximately 40 mph in a 25 mph zone.  Next, Klen slowed the motorcycle, turned into an alley, then turned into a

parking lot behind the Master Transmission building.  Instead of stopping in the parking lot, Klen tried to drive his motorcycle between several parked cars and a building.  He came to a stop when his motorcycle became pinned between a parked car and a building. Officer Eldridge believed that Klen was intentionally fleeing from him when Klen drove his motorcycle into the narrow area between a parked car and a building.

When the motorcycle finally came to rest, Officer Eldridge approached, and ordered Klen and Berglund to raise their hands and dismount the motorcycle.  They failed to follow his orders, and Klen placed his hand inside his jacket pocket.  Officer Eldridge feared Klen was reaching for a weapon, so he drew his weapon.  Officer Eldridge told Klen to remove his hand from his jacket and raise his hands over his head.  Klen refused, so Officer Eldridge sprayed one shot of chemical spray to Klen's face (Klen claims it was two shots). The chemical spray did not seem to affect Klen, perhaps because he was wearing sealed riding glasses.

Officer Eldridge then attempted to restrain Klen and remove him from the motorcycle.  Berglund started swinging her arms at Officer Eldridge, so he removed her from the motorcycle and ordered Klen to get off.  Klen refused to cooperate, so Officer Eldridge grabbed his left arm and pulled Klen off the motorcycle.  Klen claims he could not dismount the motorcycle because his leg was pinned between the car and the building.  Officer Eldridge never heard Klen say that his leg was

-5-

stuck, or that he was not able to get off the motorcycle.   During Officer Eldridge's struggle to handcuff Klen (Klen resisted), Sergeant James Poling of the Crown Point Police Department arrived on the scene and helped Officer Eldridge gain control of Klen's left hand and place it in the handcuffs.   Subsequently, a pocket knife was found and removed from Klen's person.

Once Klen was in handcuffs, he asked Officer Eldridge to take off his left boot.  Officer Eldridge then noticed that his foot was turned to the left and appeared to be broken or dislocated, so he radioed for an ambulance.  When asked if his leg hurt, Klen replied, "no, not really."  Although Klen alleges in his complaint that the officers kicked him in the face and ribs, both Officer Eldridge and Sergeant Poling attest in their affidavits that they did not hit, punch or kick Klen on any part of his body.  Officer Pouch of the Crown Point Police Department arrived on the scene after Klen was in handcuffs, and Officer Pouch did not have any physical contact with Klen, and he did not assist in the seizure or arrest of Klen.

Klen consented to a blood test at the medical center which indicated a blood alcohol content of .15.  He was charged by the Lake County Prosecutor with two counts of resisting law enforcement, three counts of operating while intoxicated, and one count of reckless driving.  On April 13, 2005, these charges were dismissed against Klen in exchange for his guilty plea to 2005 charges of resisting law enforcement and operating while intoxicated.

Two eye witnesses told Officer Poling that while they were in their vehicle, they saw a police car with emergency lights and siren activated, trying to pull over a motorcycle. The witnesses saw the motorcycle speed away from the police car, and it almost struck their car when the motorcycle sped past them. They heard the female passenger (Berglund) yell to the male driver (Klen) that he should stop because the police were following them.

Dr. Joseph Schwartz treated Klen for the injuries he sustained on the night of August 31, 2003. According to his deposition testimony, Klen sustained fractures to his left tibia and fibula. Based upon his medical experience in treating individuals who have been involved in traumatic accidents, Dr. Schwartz concluded that Klen's leg fractures were caused by the impact of the motorcycle accident, not by a struggle or fall to the ground. Dr. Schwartz did not note any chipped or damaged teeth, bruising, swelling, or other marks on Klen's face or head.

DISCUSSION

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S.

317, 322-23 (1986).  In other words, the record must reveal that no reasonable jury could find for the nonmovant.  *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant.  *Anderson*, 477 U.S. at 255; *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989).  "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'"  *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue

may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d  405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate.  In this situation, there can be "'no genuine issue as to any material fact', since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

<u>Section 1983</u>

Klen seeks relief under 42 U.S.C. section 1983, which provides a cause of action against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . ."  Klen has stated a section 1983 claim against Officer Eldridge, Officer Pouch, and Sergeant Poling in their individual and official capacities, as well as the City of Crown Point and Crown Point Police Department.

To the extent Klen has sued the police officers in their official capacity, it is established law that those claims are treated as if

the plaintiff has sued the municipality itself.  *See Kentucky v.
Graham*, 473 U.S. 159, 165 (1985); *Brandon v. Holt*, 469 U.S. 464, 471-
72 (1985).  Thus the 1983 claims against Officer Eldridge, Officer
Pouch, and Sergeant Poling in their official capacities are treated
as claims against the City of Crown Point.  Additionally, municipal
police departments cannot be sued in conjunction with municipalities,
because they are merely arms of local municipalities.  *Irvin v.
Borough of Darby*, 937 F. Supp. 446, 450 (E.D. Pa. 1996); *see also West
v. Waymire*, 114 F.3d 646, 646-47 (7th Cir. 1997) (finding the naming
of a town's police department in a 1983 suit adds nothing because it
is "not a suable entity separate from the [t]own."); *Jones v. Bowman*,
694 F. Supp. 538, 544 (N.D. Ind. 1988) (finding police department
cannot be sued because it "is merely a vehicle through which the city
government fulfills its policy functions").

When a plaintiff brings suit against a municipality under section
1983, the plaintiff must allege the existence of an unconstitutional
policy or custom of the municipality in order to survive summary
judgment.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988)
("[local] governments should be held responsible when, and only when,
their official policies cause their employees to violate another
person's constitutional rights."); *see also Monell v. Dept. of Soc.
Servs. of the City of New York*, 436 U.S. 658, 690-91 (1978).  A
municipality cannot incur liability in an action under section 1983
merely because it employs a tortfeasor.  *Monell*, 436 U.S. at 691.

Municipal liability under section 1983 is limited.  In *Monell*, the Supreme Court restricted liability to cases in which "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers."  *Id.* at 690.  A plaintiff seeking to find a municipality liable under section 1983 must also establish a causal nexus between his injury and the municipality's alleged policy or custom.  *Id.* at 693-94.

Policy or custom claims can take one of three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority.  *Garrison v. Burke*, 165 F.3d 565, 571-72 (7th Cir. 1999). Klen has not alleged that the City of Crown Point maintained an express policy of using excessive force during arrests, or that the city had a widespread practice that constituted a custom of depriving people of their constitutional rights by using excessive and unreasonable force.  Nor has Klen pointed to any evidence in the record supporting such theories.  Klen also has not alleged that he suffered a constitutional injury caused by a person with final policymaking authority.  Moreover, Klen has not satisfied his burden

of proving that the defendant officers were policymakers.[1] *See, e.g.,*
*Eversole v. Steele*, 59 F.3d 710, 715-16 (7th Cir. 1995) (holding
detective and sheriff did not have final policymaking authority with
respect to investigation and arrest of plaintiff).  For these reasons,
summary judgment is warranted for Klen's section 1983 claims against
the City of Crown Point, the Crown Point Police Department, and
Officer Eldridge, Officer Pouch, and Sergeant Poling in their official
capacities.

False Arrest

Officer Eldridge, Officer Pouch, and Sergeant Poling, in their
individual capacities, are also entitled to summary judgment on Klen's
Fourth Amendment false arrest claim.  An unlwaful arrest claim asserts
a violation of the Fourth Amendment right against unreasonable
seizures of a person.  To succeed, the plaintiff has the burden of
proving that probable cause did not exist for making the arrest.  *See*
*Garrett v. City of Bloomington*, 478 N.E.2d 89, 94 (Ind. Ct. App.
1985).  "[T]he existence of probable cause for arrest is an absolute
bar to a Section 1983 claim for unlawful arrest, false imprisonment,
or malicious prosecution."  *Schertz. v. Waupaca County*, 875 F.2d 578,

---

[1] Indiana law provides that the safety board of a city shall
administer the police and fire departments of the city.  Ind.
Code § 36-8-3-2.  Thus, the rules and regulations governing the
Crown Point Police Department were passed and adopted by the
Crown Point Board of Public Works and Safety.  (*See* Defs.' Ex. I,
Rules and Regulations Governing the City of Crown Point Police
Department.)

582 (7th Cir. 1989); *see also Fernandez v. Perez*, 937 F.2d 368, 371

(7th Cir. 1991).   If the plaintiff fails to demonstrate the absence

of probable cause, or if the record fails to reflect probable cause

for the arrest, then the plaintiff's case fails.  *Id.*

In this case, the officers had probable cause to arrest Klen for

operating a motor vehicle while intoxicated, reckless driving, and

resisting arrest.[2]  The following undisputed facts show the officers

---

[2]Pursuant to Indiana Code § 9-30-5-2:
(a) Except as provided in subsection (b), a person who
operates a vehicle while intoxicated commits a Class C
misdemeanor.
(b) An offense described in subsection (a) is a Class A
misdemeanor if the person operates a vehicle in a
manner that endangers a person.

Pursuant to Indiana Code § 9-21-8-52, reckless driving,
a Class B misdemeanor, occurs, in pertinent part when:
(a) A person who operates a vehicle and who recklessly:
        (1) drives at such an unreasonably high rate
        of speed or at such an unreasonably low rate
        of speed under the circumstances as to:
            (A) endanger the safety or the
            property of others; or
            (B) block the proper flow of
            traffic;
                        * * *
        (3) drives in and out of a line of traffic,
        except as otherwise permitted;
        (4) speeds up or refuses to give one-half (½)
        of the roadway to a driver overtaking and
        desiring to pass.

Pursuant to Indiana Code § 35-44-3-3, resisting arrest,
a Class A misdemeanor, occurs, in pertinent part when:
(a) A person who knowingly or intentionally:
        (1) forcibly resists, obstructs, or
        interferes with a law enforcement officer or
        a person assisting the officer while the
        officer is lawfully engaged in the execution
        of the officer's duties;

had probable cause to arrest Klen for reckless driving and for operating a motor vehicle while intoxicated: Klen disregarded a red traffic light, he failed to stop when Officer Eldridge activated his emergency lights, Klen was driving approximately 40 mph in a 25 mph zone, he nearly struck the car of the two witnesses during the pursuit, he tried to drive his motorcycle between several parked cars and a building, and at the medical center, Klen's blood test was returned measuring an alcohol concentration of .15.

Officer Eldridge also had probable cause to arrest Klen for resisting arrest.  Klen failed to pull over when Officer Eldridge activated his emergency lights, and continued to drive away from the officer.  Moreover, after the motorcycle finally came to a stop, Klen failed to follow orders to raise his hands and dismount his motorcycle, in fact, Klen placed his hands in his pocket.  Klen also resisted being placed in handcuffs, and Officer Eldridge had to get assistance from Officer Poling to restrain Klen.  Officer Eldridge had probable cause to arrest Klen for resisting arrest based upon Klen's flight from the officer and his forcible resistance when the officers

---

* * *
> (3) flees from a law enforcement officer after the
> officer has, by visible or audible means, including
> operation of the law enforcement officer's siren or
> emergency lights, identified himself or herself and
> ordered the person to stop;

commits resisting law enforcement, a class A misdemeanor except
as provided in subsection (b).

were attempting to gain custody of Klen.  Because there was probable
cause to arrest Klen, summary judgment is appropriate on his claim for
false arrest against the individual officer defendants.


    Excessive Force

    It is well settled that "*all* claims that law enforcement officers
have used excessive force - deadly or not - in the course of an
arrest, investigatory stop, or other 'seizure' of a free citizen
should be analyzed under the Fourth Amendment and its 'reasonableness'
standard."  *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in
original).  While "the right to make an arrest or investigatory stop
necessarily carries with it the right to use some degree of physical
coercion or threat thereof to effect it," the Fourth Amendment
prohibits the use of excessive force during the execution of a
seizure.  *Id*. at 396.

    A "police officer's use of force is unconstitutional if, 'judging
from the totality of the circumstances at the time of the arrest, the
officer used greater force than was reasonably necessary to make the
arrest.'" *Fidler v. City of Indianapolis*, 428 F. Supp. 2d 857, 862
(S.D. Ind. 2006) (quoting *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir.
2003) (citing *Lester v. City of Chicago*, 830 F.2d 706, 713 (7th Cir.
1987)).  In evaluating whether the force used was excessive, the fact-
finder must balance the intrusion to the individual with the
government interests at stake.  *Graham*, 490 U.S. at 396.  In so doing,

the Court must view the circumstances "from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Id.* at 396. Specific facts to consider in determining whether a police officer used excessive force include the severity of the crime, whether the suspect posed an immediate threat to the safety of the officer or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396.

Here, the Court does not believe the officers used excessive force when Officer Eldridge sprayed pepper spray, pulled Klen off his motorcycle, and handcuffed Klen. Klen had violated several traffic laws, fled from the police, refused to follow orders to dismount his vehicle, and refused to remove his hand from his jacket pocket. When Officer Eldridge administered chemical spray to Klen's face (whether it was one spray or two sprays), this Court finds that it was reasonable under the circumstances. Officer Eldridge attested that he administered the chemical spray because he feared for his safety. (Eldridge Aff. ¶ 27.) Under the circumstances, it was reasonable for the officer to fear for his own safety (especially since Klen refused to remove his hand from his pocket, and could have harbored a weapon), and Eldridge took a reasonable step to secure custody of Klen. Moreover, there is no evidence that Klen was harmed by the pepper spray, which may not have even reached Klen's eyes due to his protective glasses.

Furthermore, the Court finds Officer Eldridge, and to the extent

he participated in handcuffing Klen, Sergeant Poling, acted reasonably when they forcefully pulled Klen off his motorcycle, and struggled to handcuff him.[3]  *See, e.g., Lawrence v. Kenosha County*, 391 F.3d 837 (7th Cir. 2004) (finding officer did not use excessive force in forcibly removing plaintiff from vehicle); *Smith v. Ball State Univ.*, 295 F.3d 763 (7th Cir. 2002) (holding university police officers did not use excessive force in removing student from vehicle, tackling and handcuffing him, when student was unresponsive to officers' questioning and requests to exit vehicle); *Bringle v. State*, 745 N.E.2d 821 (Ind. Ct. App. 2001) (officers' use of force was not excessive in resorting to use of pepper spray and forcing defendant's fingers away from steering wheel).

Plaintiff has not presented sufficient evidence showing that Officer Eldridge and Sergeant Poling's actions were unreasonable.  To the contrary, Defendants have provided the Court with undisputed facts in the record showing that Defendants' conduct was objectively reasonable.[4]  Because the force used by the officers in removing Klen

---

[3]The undisputed facts show that Officer Pouch did not arrest or use force to apprehend Klen.  Section 1983 creates a cause of action based upon a defendant that was personally responsible for the deprivation.  *See Johnson v. Snyder*, 444 F.3d 579, 583-84 (7th Cir. 2006).  Because Officer Pouch was not involved in arresting Klen, summary judgment is warranted for all claims against Officer Pouch.

[4]Defendants also argue that even if the officers used force that was objectively unreasonable, the officers are immune from suit under the doctrine of qualified immunity.  Because this Court has found that the officers' actions were objectively reasonable, the Court need not address this argument.

from his motorcycle and securing his arrest was reasonable under the circumstances, summary judgment is proper in favor of the individual defendants.

## State Law Claims

The remaining claims are state law claims.  Klen states claims for intentional infliction of emotional distress and battery.  Upon due consideration, the state law claims are **DISMISSED** without prejudice because the federal claims have been dismissed prior to trial.  28 U.S.C. § 1367(c); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

## CONCLUSION

For the aforementioned reasons, Defendants' Motion for Summary Judgment is **GRANTED**.  The Clerk is **ORDERED** to **DISMISS WITH PREJUDICE** Plaintiff's claims under 42 U.S.C. section 1983 including the claim for excessive use of police force and false arrest.  The Clerk is **ORDERED** to **DISMISS WITHOUT PREJUDICE** Plaintiff's state law claims for

intentional infliction of emotional distress and battery. Furthermore, the Clerk is **ORDERED** to **CLOSE** this case.


**DATED:  November 14, 2006**          **/s/RUDY LOZANO, Judge**
                                       **United States District Court**